## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LIBERTY INSURANCE CORPORATION
and THE CINCINNATI INSURANCE COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A,

             Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

             Defendant.

Case No. 20-cv-

Hon.

Mag. Judge

---

John M. McManus (P44102)
**MCMANUS LAW, PLLC**
Attorney for Plaintiffs
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989

Paul A. McCarthy (P47212)
Patrick E. Sweeney (P79822)
**RHOADES MCKEE PC**
Attorneys for Defendant
55 Campau Ave., N.W., Suite 300
Grand Rapids, MI 49503
(616) 235-3500
mccarthy@rhoadesmckee.com
psweeney@rhoadesmckee.com

---

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

PLEASE TAKE NOTICE that Defendant LSP Products Group, Inc. hereby removes to this Court the state court action described below.

1.    On September 16, 2020, a civil action was commenced in the 10th Judicial Circuit Court for the County of Saginaw, State of Michigan, captioned *LIBERTY INSURANCE CORPORATION and THE CINCINNATI INSURANCE*

*COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A v LSP PRODUCTS GROUP, INC*., Case No. 20-042811-NP. A copy of the Complaint with exhibit is attached as **Exhibit 1**. The state court docket is attached as **Exhibit 2**.

2.     The first date upon which Defendant received a copy of the Complaint was September 23, 2020 when Defendant was served with a copy of the Complaint and a summons from the state court. A copy of the summons is attached as **Exhibit 3**. Pursuant to 28 U.S.C. § 1446(a), **Exhibits 1 and 3** constitute all process, pleadings, and orders served upon Defendant in this action.

3.     This case involves allegations that products manufactured by Defendant were defective, and allegedly caused real and personal property damage to the Plaintiffs' insureds in Michigan.

4.     This case is an action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.     As alleged in the Complaint, Plaintiff Liberty Insurance Corporation is an insurance company organized under the laws of the State of Illinois, with a principal place of business located in Massachusetts. **Exhibit 1**, ¶ 7. Plaintiff Liberty

Insurance Corporation is a citizen of Illinois and Massachusetts pursuant to 28 U.S.C. § 1332(c).

6.      As alleged in the Complaint, Plaintiff The Cincinnati Insurance Company is a property and casualty company organized under the laws of the State of Ohio, with a principal place of business located in Ohio. Plaintiff The Cincinnati Insurance Company is a citizen of Ohio pursuant to 28 U.S.C. § 1332(c). **Exhibit 1**, ¶ 8.

7.      Defendant LSP Products Group, Inc. was at the time of the Complaint's filing, and is now, organized under the laws of the State of Nevada, with its principal place of business located at 2727 Chemsearch Boulevard, Irving, Texas. Defendant is a citizen of Nevada and Texas pursuant to 28 U.S.C. § 1332(c), and is not a citizen of Michigan.

8.      Complete diversity of citizenship exists in this case.

9.      In their Complaint, Plaintiffs state that their injuries and damages include "the full extent of the amounts paid by Plaintiffs to their Insureds[.]" **Exhibit 1**, ¶ 119. In Schedule A attached to the Complaint, Plaintiffs assert that Plaintiff The Cincinnati Insurance Company paid its insured Riverfront Medical Realty, LLC $296,456.61. The amount in controversy, excluding interests and costs, therefore exceeds $75,000.

10.    Defendant objects to Plaintiffs' improper consolidation of both claims listed on Schedule A to Plaintiffs' Complaint, which do not arise out of the same transaction or occurrence. The claims should be severed due to misjoinder under Federal Rule of Civil Procedure 21, and Plaintiff Liberty Insurance Corporation's claim should be remanded to state court because it does not exceed $75,000.

11.    This Notice of Removal is being filed within 30 days after Defendant received a copy of the initial pleading setting forth removal claims. This Notice is therefore timely under 28 U.S.C. § 1446(b).

12.    No further proceedings have been conducted in this matter in the Circuit Court for the County of Saginaw, Michigan.

13.    In accordance with 28 U.S.C. § 1446(d), the undersigned certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Saginaw County Circuit Court. A true and correct copy of Defendant's Notice to Adverse Parties of Removal to Federal Court is attached as **Exhibit 4**.

*Respectfully submitted,*
RHOADES MCKEE PC
Attorneys for Defendant

Dated:  October 20, 2020

By:  */s/Paul A. McCarthy*
Paul A. McCarthy (P47212)
Patrick E. Sweeney (P79822)
55 Campau Avenue, N.W., Suite 300
Grand Rapids, MI 49503
Telephone:  (616) 235-3500
mccarthy@rhoadesmckee.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 20, 2020, I filed the foregoing Defendant LSP

Products Group, Inc.'s Notice of Removal of Action with the Clerk of Court via

CM/ECF and served a true and correct copy via U.S. First Class Mail and Federal

Express upon: John M. McManus, 117 W. Fourth Street, Suite 201 Royal Oak, MI

48067.

         */s/Paul A. McCarthy*
         Paul A. McCarthy (P47212)
         RHOADES MCKEE PC
         55 Campau Avenue, N.W., Suite 300
         Grand Rapids, MI 49503
         Telephone:  (616) 235-3500
         mccarthy@rhoadesmckee.com

# Exhibit 1

## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

LIBERTY INSURANCE CORPORATION and
THE CINCINNATI INSURANCE COMPANY, as
Subrogees of the INSUREDS as listed on
SCHEDULE A,

              PLAINTIFFS,

vs.

LSP PRODUCTS GROUP, INC.,

              DEFENDANT.

_____/

File No.: 20-042811 NP-3

HON:    JANET M. BOES
         P37714

McMANUS LAW, PLLC
BY: **John M. McManus** (P44102)
Attorney for Plaintiffs
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989; Fax: (248) 284-2131

_____/

**COMPLAINT**

### COMPLAINT AND JURY DEMAND

**THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE
TRANSACTIONS OR OCCURRENCES ALLEGED IN THE COMPLAINT**

NOW COME LIBERTY INSURANCE CORPORATION and THE CINCINNATI
INSURANCE COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A, by their
attorney, McMANUS LAW, PLLC and state in their Complaint for product liability against
DEFENDANT as follows:

1

## NATURE OF THE ACTION

1.     This action seeks to recover damages caused by defects associated with LSP PRODUCTS GROUP, INC.'s (hereafter "LSP") water supply lines (hereinafter "water supply lines"), which are used to transport water from a water supply pipe to plumbing fixtures.

2.     DEFENDANT designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed other work in connection with flexible water supply lines. These water supply lines contain certain latent defects that make them unfit for their intended, anticipated or reasonably foreseeable use, including reasonably foreseeable misuse.

3.     DEFENDANT'S water supply lines are defective because of poor material selection, defective design, defective manufacturing, and lack of or inadequate warnings/instructions, that cause them to routinely fail because of circumferential fractures of the plastic coupling nut.



4.     Plaintiffs are insurers who made payments to, or on behalf of, their insureds (hereafter "Insureds") for damages caused by DEFENDANT'S water supply lines, and as a result of such payments, are subrogated to the rights of their Insureds as against DEFENDANT.

5.     "Schedule A" is a spreadsheet that lists all of Plaintiffs' Insureds who suffered damages that were caused by DEFENDANT'S defective water supply lines as a result of the plastic

2

coupling nut experiencing a circumferential fracture. The spreadsheet includes the Plaintiffs' names, Insureds' names, dates of loss, loss locations and damage amounts.

6.     Plaintiffs suffered harm as a result of DEFENDANT'S actions because its water supply lines contained defects which caused the water supply lines to fail causing harm, not only to the water supply lines, but also to Plaintiffs' Insureds' real and personal property.

## THE PARTIES

7.     Plaintiff, LIBERTY INSURANCE CORPORATION, is an insurance company organized under the laws of the state of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, MA 02116.

8.     Plaintiff, THE CINCINNATI INSURANCE COMPANY, is a property and casualty company organized under the laws of the state of Ohio, with a principal place of business located at 6200 South Gilmore Road, Fairfield, Ohio 45014.

9.     At all times relevant hereto, Plaintiffs were authorized to issue policies of insurance in the various states listed on Schedule A.

10.     At all times relevant hereto, Plaintiffs' Insureds owned and/or occupied the property where the loss occurred as listed on Schedule A (hereinafter "the Properties").

11.     Prior to the dates of loss listed on Schedule A (hereafter referred to as "dates of losses"), Plaintiffs issued a policy of insurance to Plaintiffs' Insureds; said policies covering the Properties, including their structure and/or contents, and insuring against other losses in effect on the dates of losses.

12,     Defendant, LSP PRODUCTS GROUP, INC. (hereinafter "LSP"), is a corporation duly organized and existing under the laws of the State of Nevada, with a principal place of business located at 2727 Chemsearch Boulevard, Irving, Texas 75062.

3

13.   LSP designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or performed other work in connection with its water supply lines for use with common household fixtures and appliances, including toilets and sinks.

## JURISDICTION AND VENUE

14.   This Court has limited personal jurisdiction over each of the named parties pursuant to MCL § 600.715.

15.   Venue is proper in this jurisdiction pursuant to MCL §§ 600.1627 and 600.1629.

## GENERAL ALLEGATIONS

16.   DEFENDANT designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warrantied, and/or performed other work in connection with defective water supply lines with the specific purpose that these be installed by builders, plumbers and consumers in homes and other buildings.

17.   The water supply lines were designed, manufactured and introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. The water supply lines were marketed as a safe product, of merchantable quality, and fit for their intended, anticipated and reasonably foreseeable uses.

18.   The water supply lines were used to transport water from a supply pipe to a plumbing fixture (e.g., a toilet, or a sink). The water supply lines primarily consist of three main parts: the flexible hose and two coupling nuts, one on each end of the hose, which connect the water supply lines to adjacent plumbing fixtures and the water source. Depending on the particular supply line, one or both of the coupling nuts are plastic. (hereafter referred to as "plastic coupling nut").

4

19.    At all times material hereto, the water supply lines were prone to suffering circumferential fractures of the plastic nut, resulting in water leakage causing damage to real and personal property.

20.    DEFENDANT, however, knowingly failed to disclose that its water supply lines were subject to serious defects, were unsafe, and posed a substantial risk of failure, in that the coupling nut would crack, resulting in flooding damage to building owners' real and personal property. Even after DEFENDANT became aware that its water supply lines were failing, DEFENDANT failed to notify consumers of the defects.

21.    Cracking or fracturing of the plastic coupling nut can cause the supply lines to fail, even under normal pressure conditions and absent any faulty installation and/or misuse by the consumer, because the water being transported is under pressure.

22.    DEFENDANT knew, or but for its reckless indifference, should have known, that they were receiving and were going to continue to receive reports of failed water supply lines.

23.    Despite its knowledge, DEFENDANT did not disclose to its customers or prospective purchasers that there was a substantial risk that the water supply line would manifest the defect.

24.    Consumers who purchased, and ultimate users of DEFENDANT'S water supply lines, had no way of knowing that the water supply lines were defective at the point of sale.

25.    At some time, DEFENDANT began manufacturing water supply lines with plastic coupling nuts. These plastic coupling nuts were made from an inexpensive plastic rather than metal. These plastic coupling nuts regularly suffer from a circumferential fracture resulting in flooding and damaged property.

26.   DEFENDANT'S water supply lines are connected to the plumbing fixtures such as toilets and sinks with a plastic coupling nut which was designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, and/or warranted by DEFENDANT.

27.   This plastic component is a critical part.  It secures the connector to the plumbing fixture and maintains positive water flow.

28.   When using plastics to manufacture and design parts, the plastics industry recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and performance; (b) appropriate material selection and a mold design optimized for the chosen material to achieve the functional design goal; (c) maximum functionality; and (d) optimum material usage.

29.   The DEFENDANT failed to account for  material properties and  failed to utilize design considerations  applicable to the plastic material from which the coupling nuts were made, which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to choice of materials, proper mold design, localized concentration of stress, avoiding sharp angles, notch sensitivity, material creep over time, crazing and crack propagation over time, in the design of the plastic coupling nuts.

30.   As the result of the DEFENDANT failing to account for the material properties and failure to utilized the design considerations which were well know and commonly utilized at the time the coupling nuts were designed, the coupling nuts were prone to failure from the time such coupling nuts were put into use and over time after being put into use.

6

31.     As the result of the propensity for failure from the time such coupling nuts were put into use and over time after being put into use, the coupling nuts were defective and not fit for the intended, anticipated and reasonably foreseeable use of the coupling nut.

32.     By utilizing better and economically feasible material choices, accounting for material properties and utilizing design considerations, which were well known and commonly used at the time the coupling was designed, a coupling nut that was fit for its intended, anticipated and reasonably foreseeable use, including foreseeable misuses, and was not prone to failure, was practical and feasible to design, market, distribute and sell.

33.     Despite extensive instruction to the contrary from the plastics industry found in off-the-shelf design and material guides, as well as DEFENDANT'S knowledge that repeated coupling nut failures were being reported each year, DEFENDANT continued to manufacture the defective coupling nut and the defects caused the coupling nut to repeatedly fracture in near uniform fashion after routine installation.

34.     DEFENDANT'S defectively designed plastic coupling nuts remain in homes and other buildings throughout the United States, and they will ultimately fail due to creep and creep rupture.

35.     DEFENDANT knew that its plastic coupling nuts presented excessive preventable hazards. Specifically, DEFENDANT knew that the plastic coupling nut was susceptible to circumferential fracture and that the installation instructions and warnings failed to provide the installer with sufficient information to safely install the plastic coupling nut and/or timely replace it before it failed.

36.     Despite its knowledge, DEFENDANT never provided any public warnings about the risk of the plastic coupling nut's failure and also never instituted a recall to inspect, repair, or

replace the knowingly defective plastic coupling nuts. As a result, homes and buildings throughout the United States are exposed to, and continue to suffer, catastrophic water damage due to the failure of DEFENDANT'S defective plastic coupling nuts.

37.     DEFENDANT do not instruct its customers to inspect their water supply lines for signs of failure or warn them of the water supply lines' susceptibility to failure.

38.     DEFENDANT had a duty to adequately warn consumers, purchasers, and users of its water supply lines as to how they could fail, why they can fail, and what can happen if they fail because of their defective nature.

39.     Similarly, DEFENDANT had a duty to adequately instruct consumers, purchasers, and users of its water supply lines as to how to properly install the water supply lines, how to properly maintain the water supply lines, how to prevent the coupling nut from failing and what to look for before the failure occurred.

40.     The reasonable expectation of a consumer of the water supply lines is that the life expectancy of a properly designed supply line connected to a plumbing fixture, a toilet for example, will equal or surpass that of the toilet, unless warned or informed by the manufacturer otherwise.

## FACTUAL ALLEGATIONS

41.     At all times relevant hereto, Plaintiffs' Insureds owned and/or occupied their respective Properties listed on Schedule A.

42.     Prior to the dates of losses, DEFENDANT designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or performed other work on the water supply lines which were connected to plumbing fixtures at the Properties.

8

43.     On or about the dates of loss, water leaks occurred within the Properties and originated at the fixture or appliance water supply line.

44.     The failure of the water supply lines caused the water leaks.

45.     The water leaks resulted in significant damage to the Properties and personal property of Plaintiffs' Insureds.

46.     Plaintiffs received claims upon the insurance policies issued by the plaintiffs for the damage to real and personal property caused by the failure of these water supply lines, including loss of use of the home or building, cost of cleanup and repairs, and other incidental and consequential losses suffered by the insured as the result of the water supply line failure, covered under the policy on which the claims are made.

47.     Plaintiffs paid the claims of their insureds made in connection with the failure of these water supply lines and the damages and losses resulting from such failures, as per the terms of the insurance policies issued by the plaintiffs and the plaintiffs are both equitably and contractual subrogated to the rights of their insureds to the extent of such payments and may bring this action.

48.     Plaintiffs' Insureds are in the class of persons that DEFENDANT should reasonably have foreseen as being subject to the harms caused by the defective condition of DEFENDANT'S water supply lines.

49.     DEFENDANT, at all times material hereto were regularly engage in the business of designing, manufacturing, packaging, labeling and distributing the subject water supply lines.

50.     The water supply lines were in defective condition, not fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines at the time the water supply lines left the possession and control of the DEFENDANT.

9

51.     DEFENDANT'S water supply lines were expected to and did reach the Plaintiffs' Insureds without substantial alteration in the condition in which the water supply lines were sold by DEFENDANT.

52.     At all times material hereto, DEFENDANT's water supply lines were installed and placed in use without substantial alteration.

53.     At all times material hereto, DEFENDANT'S water supply lines were used for the intended, anticipated and reasonably foreseeable use of such water supply lines.

54.     The DEFENDANT'S water supply lines were reasonably expected by purchasers and users to have a useful life equal to or greater than the plumbing fixture to which they were connected and each water supply lines which is the subject of this action failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user.

55.     The water supply lines which are the subject of this action and failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user did not, according to any instructions or warnings supplied with the water supply lines, require maintenance, care or replacement within the reasonably expected useful life of the water supply line.

56.     At all relevant times, and prior to the dates of losses listed in Schedule A , DEFENDANT knew that: (a) the risk of the failure of its water supply lines were substantial due to their inherent defects; (b) Plaintiffs' Insureds were unaware of the substantial risk that the water supply lines would break; (c) Plaintiffs' Insureds had a reasonable expectation that DEFENDANT would disclose these risks and had cured the defects associated with its products; and (d) Plaintiffs' Insureds were unaware that their water supply lines needed to be replaced to avoid sudden potentially catastrophic failure of the water supply lines, or that they had a specific useful life.

10

57.    The damages sustained by Plaintiffs and Plaintiffs' Insureds were directly and proximate caused by and are the natural and foreseeable consequence of the core of common facts surrounding DEFENDANT'S misconduct, including, but not limited to: (a) the water supply lines suffer from a defect known to DEFENDANT that led to the failure of the plastic coupling nut; (b) the water supply lines were defective for their intended, anticipated and reasonably foreseeable use at the time of sale; and (c) that DEFENDANT did not provide adequate warning/instructions concerning the defective nature of the water supply lines.

58.    As a result of the water losses and resultant damages, Plaintiffs have made payments to their Insureds in an amount in excess of $320,000.00 in accordance with the terms and conditions of the insurance policies.

**CAUSES OF ACTION**
**COUNT I –NEGLIGENT DESIGN**

59.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

60.    Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

61.    The foreseeable risks of harm to property associated with the failure of these water supply lines and the severity of such harm was substantial and warranted adequate care in the design of these water supply lines so as to minimize the risk of failures and resulting harm.

62.    The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines was foreseeable by the manufacturer at the time the water supply lines were designed, manufactured and distributed.

63.    In the exercise of ordinary care, reasonable and feasible alternative designs were available readily achievable at the time these coupling nuts were designed.

64.   The available and practical reasonable alternative designs would have eliminated the propensity for failure of these water supply lines.

65.   As the designer, manufacturer and/or seller of these water supply lines, it was the duty of LSP to:

a.   Use reasonable care in the design and engineering of its water supply lines, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines;

b.   Use reasonable care in the design and engineering of its water supply lines such that they would be equipped with all necessary and properly functioning safeguards which would prevent the plastic coupling nut from cracking and failing while it was being properly used; and

c.   Use reasonable care in the design and engineering of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

66.   LSP breached these duties in one or more of the following ways:

a.   LSP knew or should have known that its water supply lines were designed without concern for safety and performance;

b.   LSP failed to exercise ordinary care so as to design the coupling nut so that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines.

c.   LSP failed to exercise ordinary care in choosing the material for the manufacture of the coupling nuts;

d.   LSP failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of the coupling nuts, and account for the properties of the material used for manufacturing the coupling nuts;

e.   LSP failed to exercise ordinary care so as to account for design considerations applicable to the material from which the coupling nuts were made which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to avoiding sharp angles, notch sensitivity, material creep over time, and crazing and crack propagation over time;

f.   LSP failed to exercise ordinary care in the design of the molds used to manufacture the coupling nuts so as to minimize the occurrence of manufacturing defects;

12

g. LSP failed to exercise ordinary care so as to design a coupling that which would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

h. LSP failed to exercise ordinary care to test the design of the coupling not during the design phase so as to verify that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines; and

i. LSP negligently designed the water supply line in other ways, under the circumstances, to be determined.

67.    There were practical, economical and technically feasible alternative designs for the water supply lines which would have prevented the damages to Plaintiffs.

68.    As a direct and proximate result of the negligence of LSP described above, the water supply lines were rendered unreasonably dangerous in light of the foreseeable risks of harm and the water supply lines failed during the intended, anticipated and reasonably foreseeable use of the water supply lines.

69.    As a direct and proximate result of LSP's lack of ordinary care and aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

70.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

71.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

13

## COUNT II –NEGLIGENT MANUFACTURE

72. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

73. LSP designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold water supply lines which were used by Plaintiffs' Insureds.

74. In addition to being defective by design, some of the water supply lines sold by LSP also contained manufacturing defects of the coupling nut which, independently caused the coupling nuts to fail rendered the water supply line unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

75. Such manufacturing defects included brittleness of the material, failure of the material to properly fuse at the part line and voids in the material caused by failure to properly maintain the operating temperature of both the molds used to manufacture the coupling nut and the material being injected and the mold.

76. The water supply lines and coupling nuts containing manufacturing defects left the possession and control LSP in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

77. Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

78. The foreseeable risks of harm to property associated with the failure of these water supply lines and the severity of such harm was substantial and warranted adequate care in the manufacture of these water supply lines so as to minimize the risk of failures and resulting harm.

14

79.     The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines was foreseeable by the manufacturer at the time the water supply lines were manufactured and distributed.

80.     As the manufacturer of these water supply lines, it was the duty of LSP to:

    a.  Use reasonable care in the manufacturing and assembling of its water supply lines, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines; and

    b.  Use reasonable care in the manufacturing and assembling of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

81.     LSP breached these duties in one or more of the following ways:

    a.  LSP knew or should have known that its water supply lines were manufactured without concern for proper operating parameters;

    b.  LSP failed to exercise ordinary care during the manufacturing the coupling nuts to properly control mold and material temperatures.

    c.  LSP failed to exercise ordinary care in quality control so as to identify defectively manufactured coupling nuts before distribution.

    d.  LSP failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing.

    e.  LSP knew or should have known that its water supply lines were manufactured without concern for the creation of voids;

    f.  LSP knew or should have known that its water supply lines were manufactured without concern for production complying with design specifications;

    g.  LSP knew or should have known that its water supply lines were manufactured without concern for the final product becoming more brittle; and

    h.  LSP negligently manufactured the water supply line in other ways, under the circumstances, to be determined.

82.     As a direct and proximate result of the negligence of LSP described above, the water supply lines were rendered unreasonably dangerous in light of the foreseeable risks of harm

15

and the water supply lines failed during the intended, anticipated and reasonably foreseeable use of the water supply lines.

83.     As a direct and proximate result of LSP's aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

84.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

85.     In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT III – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION

86.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

87.     Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

88.     LSP knew, or should have known, that the water supply lines contained latent hazards and that consumers would not comprehend the latent hazards without adequate warnings/instructions.

89.     LSP knew, or should have known, that the water supply lines were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their water supply lines without adequate warnings/instructions.

16

90.     LSP knew, or should have known, that Plaintiffs' Insureds would use the water supply lines without first inspecting their durability.

91.     LSP failed to inform Plaintiffs' Insureds as to the water supply lines' susceptibility to sudden catastrophic failure.

92.     LSP failed to warn/instruct consumers that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

93.     LSP had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the water supply lines which were known or reasonably knowable to LSP and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines.

94.     LSP breached this duty to supply necessary and adequate warnings by;

    a.  Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

    b.  Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

    c.  Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

    d.  Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

    e.  Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

95.    The water supply lines were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to due to the lack of and inadequacy of warnings and instructions.

96.    Had necessary and adequate warnings been supplied, the purchasers and users of the water supply lines would have either not purchased and not used the water supply lines or would have otherwise avoided harm to their property.

97.    As a direct and proximate result of LSP's failure to supply necessary and adequate warnings and instructions, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

98.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

99.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT IV – BREACH OF IMPLIED WARRANTY

100.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

101.    At the time LSP designed, engineered, manufactured, assembled, sold and/or distributed the water supply lines and placed them into the stream of commerce, LSP impliedly, warranted and represented that its water supply lines were reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were

18

in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

102.   The risk of damage to the user's property associated with failure of the water supply lines and coupling nuts and the severity of this risk was foreseeable by BRASCRAFT.

103.   The likelihood of the occurrence of the failure of the coupling nut on the water supply line and resulting damage to the user's property was foreseeable by LSP at the time it designed, manufactured and sold these water supply lines.

104.   There were available, at the time these water supply lines were designed manufactured and sold, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

105.   The failure of LSP to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these water supply lines defective, prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines.

106.   The water supply lines and coupling nuts were also prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions as described in the previous paragraphs.

107.   Certain coupling nuts and associated water supply lines were not only defective by design, but also defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to failure to control mold and material temperatures during manufacturing, voids within the material, incomplete fusing of the material, brittleness of the material, failure to monitor the

manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify defectively manufactured coupling nuts before distribution.

108. The above listed warranties implied by law were breached by LSP in that the water supply lines, that caused Plaintiffs to suffer damages, were defective and prone to failure during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses of the water supply lines.

109. As a direct and proximate result of and as the natural and foreseeable consequence of LSP's aforesaid breach of warranty, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

110. By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

111. In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

### COUNT V – WILLFUL DISREGARD OF KNOWN DEFECT CREATING SUBSTANTIAL LIKELIHOOD OF INJURY (MCL 600.2949(a)

112. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

113. At the time of manufacture and/or distribution of the water supply lines, LSP had actual knowledge that the plastic coupling nuts on the water supply lines could have been properly designed and manufactured, as described above, to prevent fracturing, all of which were reasonably foreseeable.

114.   LSP had actual knowledge that as a result of the defective design and manufacture of the plastic coupling nuts attached to the water supply lines, there was a substantial likelihood that the defects would cause injuries and damages, all of which knowledge was willfully disregarded, within the meaning of MCL 600.2949(a).

115.   As a direct and proximate result of LSP's conduct meeting the requirements of MCL 600.2949(a) as set forth above, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

116.   By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

117.   In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT VI – ALLEGATIONS - DAMAGES

118.   All Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

119.   DEFENDANT'S breaches of its duties were the proximate cause of the injuries and damages suffered by Plaintiffs which injuries and damages include, but are not limited to the following:

   a.   For the full extent of the amounts paid by Plaintiffs to their Insureds;
   b.   For pre-judgment interest according to proof;
   c.   For post-judgment interest according to proof;
   d.   For Plaintiffs' costs of suit herein; and
   e.   For such other and further relief as to the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for damages against DEFENDANT in such amount as shall be deemed fair and just by a jury at the time of trial for whatever amount above $25,000.00 Plaintiffs are found to be entitled, plus interest and costs to be taxed.

McMANUS LAW, PLLC

Dated: September 14, 2020          BY: _____
                                        John M. McManus (P44102)
                                        Attorney for Plaintiffs
                                        117 W. Fourth Street, Suite 201
                                        Royal Oak, MI 48067
                                        (248) 268-8989

## JURY DEMAND

NOW COME the above named LIBERTY INSURANCE CORPORATION and THE CINCINNATI INSURANCE COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A, by and through their attorneys, McMANUS LAW, PLLC, and demand a trial by jury in the above entitled cause.

Dated: September 14, 2020          BY: _____
                                        John M. McManus (P44102)
                                        Attorney for Plaintiffs
                                        117 W. Fourth Street, Suite 201
                                        Royal Oak, MI 48067
                                        (248) 268-8989

Schedule A

| Stutman Law File No | Plaintiff | Insured | Claim Number | DOL | Damages w/ Reserves | Loss Location | Mode of Failure |
|---|---|---|---|---|---|---|---|
| SL-17141 | The Cincinnati Insurance Company | Riverfront Medical Realty, LLC | 2732628 | 8/22/2016 | $296,456.61 | 1015 S Washington Ave, Saginaw, MI 48601 | Fracture of Polymeric Coupling Nut |
| SL-17505 | Liberty Insurance Corporation | Lewis, Marlyn | 034050716 | 7/15/2016 | $24,720.65 | 22630 Rougemont Dr, Southfield, MI 48033 | Fracture of Polymeric Coupling Nut |
| | | | 2 claims | | $321,177.26 | | |

# <u>Exhibit 2</u>

# Court Civil Records

## Case Information:

| Case Number: | 20-042811-NP | Status: | Open |
|---|---|---|---|
| Judge: | Janet M. Boes | | |
| Active Date: | 09/16/2020 | Closed Date: | |
| Final Disposition: | | | |
| Foreign Judgment: | | Non Jury: | J |
| Next Appearance: | **Nothing scheduled at this time** | | |
| Mediation/Trial: | | Date: | |

## Parties Involved:

| Plaintiff/Defendant | Name | Attorney |
|---|---|---|
| Plaintiff | Insured | |
| Plaintiff | Liberty Insurance Corporation | McManus, John M. |
| Plaintiff | The Cincinnati Insurance Company (Subrogees) | McManus, John M. |
| Defendant | Lsp Products Group Inc | |

## Events:

| Date | Type | Comment |
|---|---|---|
| 09/16/2020 | C | CASE FILED WITH CIRCUIT COURT |
| 09/16/2020 | - | COMPLAINT & JURY DEMAND, FILED BY ATTY MCMANUS |
| 09/16/2020 | SI | SUMMONS ISSUED |
| 09/16/2020 | - | EXPIRES 12-16-2020 |
| 09/21/2020 | * | FILING FEE PAID |
| 09/21/2020 | * | ELECTRONIC FILING FEE PAID |
| 09/21/2020 | * | JURY FEE PAID |

©2020 County of Saginaw, Michigan. All Rights reserved. 111 South Michigan Ave. Saginaw, MI 48602

| 09/22/2020 | PFC | FILE PULLED FOR COURTROOM |
| 09/22/2020 | * | PARTY ADDED PLT: 003 INSURED |
| 09/23/2020 | ONB | ONBASE IMAGING |
| 10/02/2020 | POS | PROOF OF SERVICE: 09/23/2020, LSP PRODUCTS GROUP INC |
| 10/02/2020 | - | PERSONAL - JURY DEMAND W/SCHEDULE A |

# **<u>Exhibit 3</u>**

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>10th     JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS | CASE NO.<br>20-42811-NP |
|---|---|---|

**Court address**
111 South Michigan Avenue Saginaw, MI 48602

**Court telephone no.**
(989) 790-5470

Plaintiff's name(s), address(es), and telephone no(s).
LIBERTY INSURANCE CORPORATION and THE CINCINNATI INSURANCE COMPANY, as Subrogees of the INSURED as listed on SCHEDULE A

v

Defendant's name(s), address(es), and telephone no(s).
LSP PRODUCTS GROUP, INC.

*(stamp)* 2020 SEP 16 A 10:46 SAGINAW COUNTY, MI FILED J. HANLEY COUNTY CLERK

Plaintiff's attorney, bar no., address, and telephone no.
John M. McManus (P44102)
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>9/16/2020 | Expiration date*<br>12/16/2020 | Court clerk<br>*Michael J. Hanley* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| PROOF OF SERVICE | **SUMMONS** |
| --- | --- |
| | Case No. |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
| --- | --- | --- | --- | --- |
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .

_____
Signature

# **<u>Exhibit 4</u>**

# STATE OF MICHIGAN

# IN THE 10th JUDICIAL CIRCUIT FOR THE COUNTY OF SAGINAW

---

LIBERTY INSURANCE
CORPORATION
and THE CINCINNATI INSURANCE                    Case No. 20-042811-NP
COMPANY, as Subrogees of the
INSUREDS as listed on SCHEDULE A,              Hon. Janet M. Boes

                              Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

                              Defendant.

---

| | |
|---|---|
| John M. McManus (P44102) | Patrick E. Sweeney (P79822) |
| **MCMANUS LAW, PLLC** | **RHOADES MCKEE PC** |
| Attorney for Plaintiffs | Attorneys for Defendant |
| 117 W. Fourth Street, Suite 201 | 55 Campau Ave., N.W., Suite 300 |
| Royal Oak, MI 48067 | Grand Rapids, MI 49503 |
| (248) 268-8989 | (616) 235-3500 |
| | psweeney@rhoadesmckee.com |

---

## <u>NOTICE TO ADVERSE PARTIES OF REMOVAL TO FEDERAL COURT</u>

To Plaintiffs Liberty Insurance Corporation and The Cincinnati Insurance Company and to their attorney of record, John M. McManus:

Please take notice that a Notice of Removal of this action, as authorized by 28 U.S.C. §§ 1332 and 1441, was filed in the United States District Court for the Eastern District of Michigan on October 20, 2020.

A copy of the said Notice of Removal is attached to this Notice as **Exhibit A**, and is served and filed herewith.

1

Dated:  October 20, 2020

RHOADES MCKEE PC
Attorneys for Defendant

By:  _s/Patrick E. Sweeney_
    Patrick E. Sweeney (P79822)
Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
Telephone:  (616) 235-3500
Email: psweeney@rhoadesmckee.com

# STATE OF MICHIGAN

## IN THE 10th JUDICIAL CIRCUIT FOR THE COUNTY OF SAGINAW

---

LIBERTY INSURANCE
CORPORATION
and THE CINCINNATI INSURANCE
COMPANY, as Subrogees of the
INSUREDS as listed on SCHEDULE A,

               Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

               Defendant.

Case No. 20-042811-NP

Hon. Janet M. Boes

---

| | |
|---|---|
| John M. McManus (P44102) | Patrick E. Sweeney (P79822) |
| **MCMANUS LAW, PLLC** | **RHOADES MCKEE PC** |
| Attorney for Plaintiffs | Attorneys for Defendant |
| 117 W. Fourth Street, Suite 201 | 55 Campau Ave., N.W., Suite 300 |
| Royal Oak, MI 48067 | Grand Rapids, MI 49503 |
| (248) 268-8989 | (616) 235-3500 |
| | psweeney@rhoadesmckee.com |

---

## PROOF OF SERVICE

I certify that on October 20, 2020, I filed the foregoing Notice to Adverse Parties of Removal with the Clerk of the Court via First Class Mail and Federal Express, and that I served a true and correct copy of the foregoing upon: John M. McManus, 117 W. Fourth Street, Suite 201, Royal Oak, MI 48067.

                                 */s/Patrick E. Sweeney*
                                 Patrick E. Sweeney (P79822)
                                 RHOADES MCKEE PC
                                 55 Campau Avenue, N.W., Suite 300
                                 Grand Rapids, MI 49503
                                 Telephone:  (616) 235-3500
                                 psweeney@rhoadesmckee.com

# <u>Exhibit A</u>

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LIBERTY INSURANCE
CORPORATION
and THE CINCINNATI INSURANCE
COMPANY, as Subrogees of the
INSUREDS as listed on SCHEDULE
A,

                Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

                Defendant.

Case No. 20-cv-

Hon.

Mag. Judge

---

John M. McManus (P44102)
**MCMANUS LAW, PLLC**
Attorney for Plaintiffs
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989

Paul A. McCarthy (P47212)
Patrick E. Sweeney (P79822)
**RHOADES MCKEE PC**
Attorneys for Defendant
55 Campau Ave., N.W., Suite 300
Grand Rapids, MI 49503
(616) 235-3500
mccarthy@rhoadesmckee.com
psweeney@rhoadesmckee.com

---

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

    PLEASE TAKE NOTICE that Defendant LSP Products Group, Inc. hereby

removes to this Court the state court action described below.

    1.    On September 16, 2020, a civil action was commenced in the 10th

Judicial Circuit Court for the County of Saginaw, State of Michigan, captioned

*LIBERTY INSURANCE CORPORATION and THE CINCINNATI INSURANCE*

*COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A v LSP PRODUCTS GROUP, INC*., Case No. 20-042811-NP. A copy of the Complaint with exhibit is attached as **Exhibit 1**. The state court docket is attached as **Exhibit 2**.

2.      The first date upon which Defendant received a copy of the Complaint was September 23, 2020 when Defendant was served with a copy of the Complaint and a summons from the state court. A copy of the summons is attached as **Exhibit 3**. Pursuant to 28 U.S.C. § 1446(a), **Exhibits 1 and 3** constitute all process, pleadings, and orders served upon Defendant in this action.

3.      This case involves allegations that products manufactured by Defendant were defective, and allegedly caused real and personal property damage to the Plaintiffs' insureds in Michigan.

4.      This case is an action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      As alleged in the Complaint, Plaintiff Liberty Insurance Corporation is an insurance company organized under the laws of the State of Illinois, with a principal place of business located in Massachusetts. **Exhibit 1**, ¶ 7. Plaintiff Liberty

Insurance Corporation is a citizen of Illinois and Massachusetts pursuant to 28 U.S.C. § 1332(c).

6.     As alleged in the Complaint, Plaintiff The Cincinnati Insurance Company is a property and casualty company organized under the laws of the State of Ohio, with a principal place of business located in Ohio. Plaintiff The Cincinnati Insurance Company is a citizen of Ohio pursuant to 28 U.S.C. § 1332(c). **Exhibit 1**, ¶ 8.

7.     Defendant LSP Products Group, Inc. was at the time of the Complaint's filing, and is now, organized under the laws of the State of Nevada, with its principal place of business located at 2727 Chemsearch Boulevard, Irving, Texas. Defendant is a citizen of Nevada and Texas pursuant to 28 U.S.C. § 1332(c), and is not a citizen of Michigan.

8.     Complete diversity of citizenship exists in this case.

9.     In their Complaint, Plaintiffs state that their injuries and damages include "the full extent of the amounts paid by Plaintiffs to their Insureds[.]" **Exhibit 1**, ¶ 119. In Schedule A attached to the Complaint, Plaintiffs assert that Plaintiff The Cincinnati Insurance Company paid its insured Riverfront Medical Realty, LLC $296,456.61. The amount in controversy, excluding interests and costs, therefore exceeds $75,000.

10.     Defendant objects to Plaintiffs' improper consolidation of both claims listed on Schedule A to Plaintiffs' Complaint, which do not arise out of the same transaction or occurrence. The claims should be severed due to misjoinder under Federal Rule of Civil Procedure 21, and Plaintiff Liberty Insurance Corporation's claim should be remanded to state court because it does not exceed $75,000.

11.     This Notice of Removal is being filed within 30 days after Defendant received a copy of the initial pleading setting forth removal claims. This Notice is therefore timely under 28 U.S.C. § 1446(b).

12.     No further proceedings have been conducted in this matter in the Circuit Court for the County of Saginaw, Michigan.

13.     In accordance with 28 U.S.C. § 1446(d), the undersigned certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiffs' counsel and filed with the Clerk of the Saginaw County Circuit Court. A true and correct copy of Defendant's Notice to Adverse Parties of Removal to Federal Court is attached as **Exhibit 4**.

|  |  |
|---|---|
|  | *Respectfully submitted,* |
|  | RHOADES MCKEE PC |
|  | Attorneys for Defendant |
| Dated:  October 20, 2020 |  |
|  | By: */s/Paul A. McCarthy* |
|  | Paul A. McCarthy (P47212) |
|  | Patrick E. Sweeney (P79822) |
|  | 55 Campau Avenue, N.W., Suite 300 |
|  | Grand Rapids, MI 49503 |
|  | Telephone:  (616) 235-3500 |
|  | mccarthy@rhoadesmckee.com |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 20, 2020, I filed the foregoing Defendant LSP Products Group, Inc.'s Notice of Removal of Action with the Clerk of Court via CM/ECF and served a true and correct copy via U.S. First Class Mail and Federal Express upon: John M. McManus, 117 W. Fourth Street, Suite 201 Royal Oak, MI 48067.

            */s/Paul A. McCarthy*
            Paul A. McCarthy (P47212)
            RHOADES MCKEE PC
            55 Campau Avenue, N.W., Suite 300
            Grand Rapids, MI 49503
            Telephone:  (616) 235-3500
            mccarthy@rhoadesmckee.com

# __Exhibit 1__

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

LIBERTY INSURANCE CORPORATION and
THE CINCINNATI INSURANCE COMPANY, as
Subrogees of the INSUREDS as listed on
SCHEDULE A,

                PLAINTIFFS,

vs.

LSP PRODUCTS GROUP, INC.,

                DEFENDANT.

_____/

File No.: 20- 042811 NP-3

HON:     JANET M. BOES
               P37714

McMANUS LAW, PLLC
BY: **John M. McManus** (P44102)
Attorney for Plaintiffs
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989; Fax: (248) 284-2131

_____/

**COMPLAINT**

## COMPLAINT AND JURY DEMAND

**THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE
TRANSACTIONS OR OCCURRENCES ALLEGED IN THE COMPLAINT**

NOW COME LIBERTY INSURANCE CORPORATION and THE CINCINNATI
INSURANCE COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A, by their
attorney, McMANUS LAW, PLLC and state in their Complaint for product liability against
DEFENDANT as follows:

1

## NATURE OF THE ACTION

1.    This action seeks to recover damages caused by defects associated with LSP PRODUCTS GROUP, INC.'s (hereafter "LSP") water supply lines (hereinafter "water supply lines"), which are used to transport water from a water supply pipe to plumbing fixtures.

2.    DEFENDANT designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed other work in connection with flexible water supply lines. These water supply lines contain certain latent defects that make them unfit for their intended, anticipated or reasonably foreseeable use, including reasonably foreseeable misuse.

3.    DEFENDANT'S water supply lines are defective because of poor material selection, defective design, defective manufacturing, and lack of or inadequate warnings/instructions, that cause them to routinely fail because of circumferential fractures of the plastic coupling nut.



4.    Plaintiffs are insurers who made payments to, or on behalf of, their insureds (hereafter "Insureds") for damages caused by DEFENDANT'S water supply lines, and as a result of such payments, are subrogated to the rights of their Insureds as against DEFENDANT.

5.    "Schedule A" is a spreadsheet that lists all of Plaintiffs' Insureds who suffered damages that were caused by DEFENDANT'S defective water supply lines as a result of the plastic

coupling nut experiencing a circumferential fracture. The spreadsheet includes the Plaintiffs'
names, Insureds' names, dates of loss, loss locations and damage amounts.

6.      Plaintiffs suffered harm as a result of DEFENDANT'S actions because its water
supply lines contained defects which caused the water supply lines to fail causing harm, not only
to the water supply lines, but also to Plaintiffs' Insureds' real and personal property.

## THE PARTIES

7.      Plaintiff, LIBERTY INSURANCE CORPORATION, is an insurance company
organized under the laws of the state of Illinois, with a principal place of business located at 175
Berkeley Street, Boston, MA 02116.

8.      Plaintiff, THE CINCINNATI INSURANCE COMPANY, is a property and casualty
company organized under the laws of the state of Ohio, with a principal place of business located at
6200 South Gilmore Road, Fairfield, Ohio 45014.

9.      At all times relevant hereto, Plaintiffs were authorized to issue policies of insurance
in the various states listed on Schedule A.

10.     At all times relevant hereto, Plaintiffs' Insureds owned and/or occupied the
property where the loss occurred as listed on Schedule A (hereinafter "the Properties").

11.     Prior to the dates of loss listed on Schedule A (hereafter referred to as "dates of
losses"), Plaintiffs issued a policy of insurance to Plaintiffs' Insureds; said policies covering the
Properties, including their structure and/or contents, and insuring against other losses in effect on
the dates of losses.

12.     Defendant, LSP PRODUCTS GROUP, INC. (hereinafter "LSP"), is a corporation
duly organized and existing under the laws of the State of Nevada, with a principal place of
business located at 2727 Chemsearch Boulevard, Irving, Texas 75062.

3

13.    LSP designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or performed other work in connection with its water supply lines for use with common household fixtures and appliances, including toilets and sinks.

## JURISDICTION AND VENUE

14.    This Court has limited personal jurisdiction over each of the named parties pursuant to MCL § 600.715.

15.    Venue is proper in this jurisdiction pursuant to MCL §§ 600.1627 and 600.1629.

## GENERAL ALLEGATIONS

16.    DEFENDANT designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warrantied, and/or performed other work in connection with defective water supply lines with the specific purpose that these be installed by builders, plumbers and consumers in homes and other buildings.

17.    The water supply lines were designed, manufactured and introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. The water supply lines were marketed as a safe product, of merchantable quality, and fit for their intended, anticipated and reasonably foreseeable uses.

18.    The water supply lines were used to transport water from a supply pipe to a plumbing fixture (e.g., a toilet, or a sink). The water supply lines primarily consist of three main parts: the flexible hose and two coupling nuts, one on each end of the hose, which connect the water supply lines to adjacent plumbing fixtures and the water source. Depending on the particular supply line, one or both of the coupling nuts are plastic. (hereafter referred to as "plastic coupling nut").

4

19.     At all times material hereto, the water supply lines were prone to suffering circumferential fractures of the plastic nut, resulting in water leakage causing damage to real and personal property.

20.     DEFENDANT, however, knowingly failed to disclose that its water supply lines were subject to serious defects, were unsafe, and posed a substantial risk of failure, in that the coupling nut would crack, resulting in flooding damage to building owners' real and personal property. Even after DEFENDANT became aware that its water supply lines were failing, DEFENDANT failed to notify consumers of the defects.

21.     Cracking or fracturing of the plastic coupling nut can cause the supply lines to fail, even under normal pressure conditions and absent any faulty installation and/or misuse by the consumer, because the water being transported is under pressure.

22.     DEFENDANT knew, or but for its reckless indifference, should have known, that they were receiving and were going to continue to receive reports of failed water supply lines.

23.     Despite its knowledge, DEFENDANT did not disclose to its customers or prospective purchasers that there was a substantial risk that the water supply line would manifest the defect.

24.     Consumers who purchased, and ultimate users of DEFENDANT'S water supply lines, had no way of knowing that the water supply lines were defective at the point of sale.

25.     At some time, DEFENDANT began manufacturing water supply lines with plastic coupling nuts. These plastic coupling nuts were made from an inexpensive plastic rather than metal. These plastic coupling nuts regularly suffer from a circumferential fracture resulting in flooding and damaged property.

5

26.     DEFENDANT'S water supply lines are connected to the plumbing fixtures such as toilets and sinks with a plastic coupling nut which was designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, and/or warranted by DEFENDANT.

27.     This plastic component is a critical part.  It secures the connector to the plumbing fixture and maintains positive water flow.

28.     When using plastics to manufacture and design parts, the plastics industry recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and performance; (b) appropriate material selection and a mold design optimized for the chosen material to achieve the functional design goal; (c) maximum functionality; and (d) optimum material usage.

29.     The DEFENDANT failed to account for  material properties and  failed to utilize design considerations  applicable to the plastic material from which the coupling nuts were made, which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to choice of materials, proper mold design, localized concentration of stress, avoiding sharp angles, notch sensitivity, material creep over time, crazing and crack propagation over time, in the design of the plastic coupling nuts.

30.     As the result of the DEFENDANT failing to account for the material properties and failure to utilized the design considerations which were well know and commonly utilized at the time the coupling nuts were designed, the coupling nuts were prone to failure from the time such coupling nuts were put into use and over time after being put into use.

31.    As the result of the propensity for failure from the time such coupling nuts were put into use and over time after being put into use, the coupling nuts were defective and not fit for the intended, anticipated and reasonably foreseeable use of the coupling nut.

32.    By utilizing better and economically feasible material choices, accounting for material properties and utilizing design considerations, which were well known and commonly used at the time the coupling was designed, a coupling nut that was fit for its intended, anticipated and reasonably foreseeable use, including foreseeable misuses, and was not prone to failure, was practical and feasible to design, market, distribute and sell.

33.    Despite extensive instruction to the contrary from the plastics industry found in off-the-shelf design and material guides, as well as DEFENDANT'S knowledge that repeated coupling nut failures were being reported each year, DEFENDANT continued to manufacture the defective coupling nut and the defects caused the coupling nut to repeatedly fracture in near uniform fashion after routine installation.

34.    DEFENDANT'S defectively designed plastic coupling nuts remain in homes and other buildings throughout the United States, and they will ultimately fail due to creep and creep rupture.

35.    DEFENDANT knew that its plastic coupling nuts presented excessive preventable hazards. Specifically, DEFENDANT knew that the plastic coupling nut was susceptible to circumferential fracture and that the installation instructions and warnings failed to provide the installer with sufficient information to safely install the plastic coupling nut and/or timely replace it before it failed.

36.    Despite its knowledge, DEFENDANT never provided any public warnings about the risk of the plastic coupling nut's failure and also never instituted a recall to inspect, repair, or

7

replace the knowingly defective plastic coupling nuts. As a result, homes and buildings throughout the United States are exposed to, and continue to suffer, catastrophic water damage due to the failure of DEFENDANT'S defective plastic coupling nuts.

37.    DEFENDANT do not instruct its customers to inspect their water supply lines for signs of failure or warn them of the water supply lines' susceptibility to failure.

38.    DEFENDANT had a duty to adequately warn consumers, purchasers, and users of its water supply lines as to how they could fail, why they can fail, and what can happen if they fail because of their defective nature.

39.    Similarly, DEFENDANT had a duty to adequately instruct consumers, purchasers, and users of its water supply lines as to how to properly install the water supply lines, how to properly maintain the water supply lines, how to prevent the coupling nut from failing and what to look for before the failure occurred.

40.    The reasonable expectation of a consumer of the water supply lines is that the life expectancy of a properly designed supply line connected to a plumbing fixture, a toilet for example, will equal or surpass that of the toilet, unless warned or informed by the manufacturer otherwise.

## FACTUAL ALLEGATIONS

41.    At all times relevant hereto, Plaintiffs' Insureds owned and/or occupied their respective Properties listed on Schedule A.

42.    Prior to the dates of losses, DEFENDANT designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or performed other work on the water supply lines which were connected to plumbing fixtures at the Properties.

8

43.   On or about the dates of loss, water leaks occurred within the Properties and originated at the fixture or appliance water supply line.

44.   The failure of the water supply lines caused the water leaks.

45.   The water leaks resulted in significant damage to the Properties and personal property of Plaintiffs' Insureds.

46.   Plaintiffs received claims upon the insurance policies issued by the plaintiffs for the damage to real and personal property caused by the failure of these water supply lines, including loss of use of the home or building, cost of cleanup and repairs, and other incidental and consequential losses suffered by the insured as the result of the water supply line failure, covered under the policy on which the claims are made.

47.   Plaintiffs paid the claims of their insureds made in connection with the failure of these water supply lines and the damages and losses resulting from such failures, as per the terms of the insurance policies issued by the plaintiffs and the plaintiffs are both equitably and contractual subrogated to the rights of their insureds to the extent of such payments and may bring this action.

48.   Plaintiffs' Insureds are in the class of persons that DEFENDANT should reasonably have foreseen as being subject to the harms caused by the defective condition of DEFENDANT'S water supply lines.

49.   DEFENDANT, at all times material hereto were regularly engage in the business of designing, manufacturing, packaging, labeling and distributing the subject water supply lines.

50.   The water supply lines were in defective condition, not fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines at the time the water supply lines left the possession and control of the DEFENDANT.

9

51.     DEFENDANT'S water supply lines were expected to and did reach the Plaintiffs' Insureds without substantial alteration in the condition in which the water supply lines were sold by DEFENDANT.

52.     At all times material hereto, DEFENDANT's water supply lines were installed and placed in use without substantial alteration.

53.     At all times material hereto, DEFENDANT'S water supply lines were used for the intended, anticipated and reasonably foreseeable use of such water supply lines.

54.     The DEFENDANT'S water supply lines were reasonably expected by purchasers and users to have a useful life equal to or greater than the plumbing fixture to which they were connected and each water supply lines which is the subject of this action failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user.

55.     The water supply lines which are the subject of this action and failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user did not, according to any instructions or warnings supplied with the water supply lines, require maintenance, care or replacement within the reasonably expected useful life of the water supply line.

56.     At all relevant times, and prior to the dates of losses listed in Schedule A , DEFENDANT knew that: (a) the risk of the failure of its water supply lines were substantial due to their inherent defects; (b) Plaintiffs' Insureds were unaware of the substantial risk that the water supply lines would break; (c) Plaintiffs' Insureds had a reasonable expectation that DEFENDANT would disclose these risks and had cured the defects associated with its products; and (d) Plaintiffs' Insureds were unaware that their water supply lines needed to be replaced to avoid sudden potentially catastrophic failure of the water supply lines, or that they had a specific useful life.

57.     The damages sustained by Plaintiffs and Plaintiffs' Insureds were directly and proximate caused by and are the natural and foreseeable consequence of the core of common facts surrounding DEFENDANT'S misconduct, including, but not limited to: (a) the water supply lines suffer from a defect known to DEFENDANT that led to the failure of the plastic coupling nut; (b) the water supply lines were defective for their intended, anticipated and reasonably foreseeable use at the time of sale; and (c) that DEFENDANT did not provide adequate warning/instructions concerning the defective nature of the water supply lines.

58.     As a result of the water losses and resultant damages, Plaintiffs have made payments to their Insureds in an amount in excess of $320,000.00 in accordance with the terms and conditions of the insurance policies.

## CAUSES OF ACTION
## COUNT I –NEGLIGENT DESIGN

59.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

60.     Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

61.     The foreseeable risks of harm to property associated with the failure of these water supply lines and the severity of such harm was substantial and warranted adequate care in the design of these water supply lines so as to minimize the risk of failures and resulting harm.

62.     The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines was foreseeable by the manufacturer at the time the water supply lines were designed, manufactured and distributed.

63.     In the exercise of ordinary care, reasonable and feasible alternative designs were available readily achievable at the time these coupling nuts were designed.

11

64.     The available and practical reasonable alternative designs would have eliminated the propensity for failure of these water supply lines.

65.     As the designer, manufacturer and/or seller of these water supply lines, it was the duty of LSP to:

    a.  Use reasonable care in the design and engineering of its water supply lines, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines;

    b.  Use reasonable care in the design and engineering of its water supply lines such that they would be equipped with all necessary and properly functioning safeguards which would prevent the plastic coupling nut from cracking and failing while it was being properly used; and

    c.  Use reasonable care in the design and engineering of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

66.     LSP breached these duties in one or more of the following ways:

    a.  LSP knew or should have known that its water supply lines were designed without concern for safety and performance;

    b.  LSP failed to exercise ordinary care so as to design the coupling nut so that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines.

    c.  LSP failed to exercise ordinary care in choosing the material for the manufacture of the coupling nuts;

    d.  LSP failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of the coupling nuts, and account for the properties of the material used for manufacturing the coupling nuts;

    e.  LSP failed to exercise ordinary care so as to account for design considerations applicable to the material from which the coupling nuts were made which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to avoiding sharp angles, notch sensitivity, material creep over time, and crazing and crack propagation over time;

    f.  LSP failed to exercise ordinary care in the design of the molds used to manufacture the coupling nuts so as to minimize the occurrence of manufacturing defects;

12

g. LSP failed to exercise ordinary care so as to design a coupling that which would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

h. LSP failed to exercise ordinary care to test the design of the coupling not during the design phase so as to verify that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines; and

i. LSP negligently designed the water supply line in other ways, under the circumstances, to be determined.

67. There were practical, economical and technically feasible alternative designs for the water supply lines which would have prevented the damages to Plaintiffs.

68. As a direct and proximate result of the negligence of LSP described above, the water supply lines were rendered unreasonably dangerous in light of the foreseeable risks of harm and the water supply lines failed during the intended, anticipated and reasonably foreseeable use of the water supply lines.

69. As a direct and proximate result of LSP's lack of ordinary care and aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

70. By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

71. In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

13

## COUNT II –NEGLIGENT MANUFACTURE

72.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

73.     LSP designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold water supply lines which were used by Plaintiffs' Insureds.

74.     In addition to being defective by design, some of the water supply lines sold by LSP also contained manufacturing defects of the coupling nut which, independently caused the coupling nuts to fail rendered the water supply line unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

75.     Such manufacturing defects included brittleness of the material, failure of the material to properly fuse at the part line and voids in the material caused by failure to properly maintain the operating temperature of both the molds used to manufacture the coupling nut and the material being injected and the mold.

76.     The water supply lines and coupling nuts containing manufacturing defects left the possession and control LSP in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

77.     Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

78.     The foreseeable risks of harm to property associated with the failure of these water supply lines and the severity of such harm was substantial and warranted adequate care in the manufacture of these water supply lines so as to minimize the risk of failures and resulting harm.

14

79.    The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines was foreseeable by the manufacturer at the time the water supply lines were manufactured and distributed.

80.    As the manufacturer of these water supply lines, it was the duty of LSP to:

    a.  Use reasonable care in the manufacturing and assembling of its water supply lines, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines; and

    b.  Use reasonable care in the manufacturing and assembling of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

81.    LSP breached these duties in one or more of the following ways:

    a.  LSP knew or should have known that its water supply lines were manufactured without concern for proper operating parameters;

    b.  LSP failed to exercise ordinary care during the manufacturing the coupling nuts to properly control mold and material temperatures.

    c.  LSP failed to exercise ordinary care in quality control so as to identify defectively manufactured coupling nuts before distribution.

    d.  LSP failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing.

    e.  LSP knew or should have known that its water supply lines were manufactured without concern for the creation of voids;

    f.  LSP knew or should have known that its water supply lines were manufactured without concern for production complying with design specifications;

    g.  LSP knew or should have known that its water supply lines were manufactured without concern for the final product becoming more brittle; and

    h.  LSP negligently manufactured the water supply line in other ways, under the circumstances, to be determined.

82.    As a direct and proximate result of the negligence of LSP described above, the water supply lines were rendered unreasonably dangerous in light of the foreseeable risks of harm

and the water supply lines failed during the intended, anticipated and reasonably foreseeable use of the water supply lines.

83.    As a direct and proximate result of LSP's aforesaid negligent acts and/or omissions, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

84.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

85.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

### COUNT III – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION

86.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

87.    Plaintiffs' Insureds were members of the class of persons that LSP should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

88.    LSP knew, or should have known, that the water supply lines contained latent hazards and that consumers would not comprehend the latent hazards without adequate warnings/instructions.

89.    LSP knew, or should have known, that the water supply lines were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their water supply lines without adequate warnings/instructions.

16

90. LSP knew, or should have known, that Plaintiffs' Insureds would use the water supply lines without first inspecting their durability.

91. LSP failed to inform Plaintiffs' Insureds as to the water supply lines' susceptibility to sudden catastrophic failure.

92. LSP failed to warn/instruct consumers that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

93. LSP had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the water supply lines which were known or reasonably knowable to LSP and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines.

94. LSP breached this duty to supply necessary and adequate warnings by;

    a. Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

    b. Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

    c. Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

    d. Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

    e. Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

17

95.     The water supply lines were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to due to the lack of and inadequacy of warnings and instructions.

96.     Had necessary and adequate warnings been supplied, the purchasers and users of the water supply lines would have either not purchased and not used the water supply lines or would have otherwise avoided harm to their property.

97.     As a direct and proximate result of LSP's failure to supply necessary and adequate warnings and instructions, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

98.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

99.     In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT IV – BREACH OF IMPLIED WARRANTY

100.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

101.     At the time LSP designed, engineered, manufactured, assembled, sold and/or distributed the water supply lines and placed them into the stream of commerce, LSP impliedly, warranted and represented that its water supply lines were reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were

18

in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

102.     The risk of damage to the user's property associated with failure of the water supply lines and coupling nuts and the severity of this risk was foreseeable by BRASCRAFT.

103.     The likelihood of the occurrence of the failure of the coupling nut on the water supply line and resulting damage to the user's property was foreseeable by LSP at the time it designed, manufactured and sold these water supply lines.

104.     There were available, at the time these water supply lines were designed manufactured and sold, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

105.     The failure of LSP to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these water supply lines defective, prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines.

106.     The water supply lines and coupling nuts were also prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions as described in the previous paragraphs.

107.     Certain coupling nuts and associated water supply lines were not only defective by design, but also defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to failure to control mold and material temperatures during manufacturing, voids within the material, incomplete fusing of the material, brittleness of the material, failure to monitor the

19

manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify defectively manufactured coupling nuts before distribution.

108.     The above listed warranties implied by law were breached by LSP in that the water supply lines, that caused Plaintiffs to suffer damages, were defective and prone to failure during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses of the water supply lines.

109.     As a direct and proximate result of and as the natural and foreseeable consequence of  LSP's aforesaid breach of warranty, for which LSP is liable, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

110.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

111.     In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

## COUNT V – WILLFUL DISREGARD OF KNOWN DEFECT CREATING SUBSTANTIAL LIKELIHOOD OF INJURY (MCL 600.2949(a)

112.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

113.     At the time of manufacture and/or distribution of the water supply lines, LSP had actual knowledge that the plastic coupling nuts on the water supply lines could have been properly designed and manufactured, as described above, to prevent fracturing, all of which were reasonably foreseeable.

114.    LSP had actual knowledge that as a result of the defective design and manufacture of the plastic coupling nuts attached to the water supply lines, there was a substantial likelihood that the defects would cause injuries and damages, all of which knowledge was willfully disregarded, within the meaning of MCL 600.2949(a).

115.    As a direct and proximate result of LSP's conduct meeting the requirements of MCL 600.2949(a) as set forth above, Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

116.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Plaintiffs' Insureds to the extent of such payments.

117.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

### COUNT VI – ALLEGATIONS - DAMAGES

118.    All Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

119.    DEFENDANT'S breaches of its duties were the proximate cause of the injuries and damages suffered by Plaintiffs which injuries and damages include, but are not limited to the following:

    a.  For the full extent of the amounts paid by Plaintiffs to their Insureds;
    b.  For pre-judgment interest according to proof;
    c.  For post-judgment interest according to proof;
    d.  For Plaintiffs' costs of suit herein; and
    e.  For such other and further relief as to the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for damages against DEFENDANT in such amount as shall be deemed fair and just by a jury at the time of trial for whatever amount above $25,000.00 Plaintiffs are found to be entitled, plus interest and costs to be taxed.

McMANUS LAW, PLLC

Dated: September 14, 2020      BY: _____

         John M. McManus (P44102)
         Attorney for Plaintiffs
         117 W. Fourth Street, Suite 201
         Royal Oak, MI 48067
         (248) 268-8989

## JURY DEMAND

NOW COME the above named LIBERTY INSURANCE CORPORATION and THE CINCINNATI INSURANCE COMPANY, as Subrogees of the INSUREDS as listed on SCHEDULE A, by and through their attorneys, McMANUS LAW, PLLC, and demand a trial by jury in the above entitled cause.

Dated: September 14, 2020      BY: _____

         John M. McManus (P44102)
         Attorney for Plaintiffs
         117 W. Fourth Street, Suite 201
         Royal Oak, MI 48067
         (248) 268-8989

Schedule A

| Stutman Law File No | Plaintiff | Insured | Claim Number | DOL | Damages w/ Reserves | Loss Location | Mode of Failure |
|---|---|---|---|---|---|---|---|
| SL-17141 | The Cincinnati Insurance Company | Riverfront Medical Realty, LLC | 2732628 | 8/22/2016 | $296,456.61 | 1015 S Washington Ave, Saginaw, MI 48601 | Fracture of Polymeric Coupling Nut |
| SL-17505 | Liberty Insurance Corporation | Lewis, Marlyn | 034050716 | 7/15/2016 | $24,720.65 | 22630 Rougemont Dr, Southfield, MI 48033 | Fracture of Polymeric Coupling Nut |
| | | | 2 claims | | $321,177.26 | | |

# **Exhibit 2**

# Court Civil Records

## Case Information:

| Case Number: | 20-042811-NP | Status: | Open |
|---|---|---|---|
| Judge: | Janet M. Boes | | |
| Active Date: | 09/16/2020 | Closed Date: | |
| Final Disposition: | | | |
| Foreign Judgment: | | Non Jury: | J |
| Next Appearance: | **Nothing scheduled at this time** | | |
| Mediation/Trial: | | Date: | |

## Parties Involved:

| Plaintiff/Defendant | Name | Attorney |
|---|---|---|
| Plaintiff | Insured | |
| Plaintiff | Liberty Insurance Corporation | McManus, John M. |
| Plaintiff | The Cincinnati Insurance Company (Subrogees) | McManus, John M. |
| Defendant | Lsp Products Group Inc | |

## Events:

| Date | Type | Comment |
|---|---|---|
| 09/16/2020 | C | CASE FILED WITH CIRCUIT COURT |
| 09/16/2020 | - | COMPLAINT & JURY DEMAND, FILED BY ATTY MCMANUS |
| 09/16/2020 | SI | SUMMONS ISSUED |
| 09/16/2020 | - | EXPIRES 12-16-2020 |
| 09/21/2020 | * | FILING FEE PAID |
| 09/21/2020 | * | ELECTRONIC FILING FEE PAID |
| 09/21/2020 | * | JURY FEE PAID |

©2020 County of Saginaw, Michigan. All Rights reserved. 111 South Michigan Ave. Saginaw, MI 48602

| 09/22/2020 | PFC | FILE PULLED FOR COURTROOM |
|------------|-----|---------------------------|
| 09/22/2020 | * | PARTY ADDED PLT: 003 INSURED |
| 09/23/2020 | ONB | ONBASE IMAGING |
| 10/02/2020 | POS | PROOF OF SERVICE: 09/23/2020, LSP PRODUCTS GROUP INC |
| 10/02/2020 | - | PERSONAL - JURY DEMAND W/SCHEDULE A |

# **<u>Exhibit 3</u>**

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 10th    JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS** | 20-42811-NP |

Court address
111 South Michigan Avenue Saginaw, MI 48602

Court telephone no.
(989) 790-5470

Plaintiff's name(s), address(es), and telephone no(s).
LIBERTY INSURANCE CORPORATION and THE
CINCINNATI INSURANCE COMPANY, as Subrogees of
the INSURED as listed on SCHEDULE A

v

Defendant's name(s), address(es), and telephone no(s).
LSP PRODUCTS GROUP, INC.

Plaintiff's attorney, bar no., address, and telephone no.
John M. McManus (P44102)
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 268-8989

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>9/16/2020 | Expiration date*<br>12/16/2020 | Court clerk<br>Michael J. Hanley |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**PROOF OF SERVICE**

| SUMMONS |
| --- |
| Case No. |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
| --- | --- | --- | --- | --- |
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                      Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .

_____
Signature

# **<u>Exhibit 4</u>**

# STATE OF MICHIGAN

# IN THE 10th JUDICIAL CIRCUIT FOR THE COUNTY OF SAGINAW

---

LIBERTY INSURANCE
CORPORATION
and THE CINCINNATI INSURANCE
COMPANY, as Subrogees of the
INSUREDS as listed on SCHEDULE A,

                   Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

                   Defendant.

Case No. 20-042811-NP

Hon. Janet M. Boes

---

| | |
|---|---|
| John M. McManus (P44102) | Patrick E. Sweeney (P79822) |
| **MᴄMᴀɴᴜs Lᴀw, PLLC** | **Rʜᴏᴀᴅᴇs MᴄKᴇᴇ PC** |
| Attorney for Plaintiffs | Attorneys for Defendant |
| 117 W. Fourth Street, Suite 201 | 55 Campau Ave., N.W., Suite 300 |
| Royal Oak, MI 48067 | Grand Rapids, MI 49503 |
| (248) 268-8989 | (616) 235-3500 |
| | psweeney@rhoadesmckee.com |

---

## NOTICE TO ADVERSE PARTIES OF REMOVAL TO FEDERAL COURT

To Plaintiffs Liberty Insurance Corporation and The Cincinnati Insurance Company and to their attorney of record, John M. McManus:

Please take notice that a Notice of Removal of this action, as authorized by 28 U.S.C. §§ 1332 and 1441, was filed in the United States District Court for the Eastern District of Michigan on October 20, 2020.

A copy of the said Notice of Removal is attached to this Notice as **Exhibit A**, and is served and filed herewith.

Dated:  October 20, 2020

RHOADES MCKEE PC
Attorneys for Defendant

By:  *s/Patrick E. Sweeney*
    Patrick E. Sweeney (P79822)
Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
Telephone:  (616) 235-3500
Email: psweeney@rhoadesmckee.com

**STATE OF MICHIGAN**

**IN THE 10th JUDICIAL CIRCUIT FOR THE COUNTY OF SAGINAW**

---

LIBERTY INSURANCE
CORPORATION
and THE CINCINNATI INSURANCE                    Case No. 20-042811-NP
COMPANY, as Subrogees of the
INSUREDS as listed on SCHEDULE A,               Hon. Janet M. Boes

                        Plaintiffs,

vs.

LSP PRODUCTS GROUP, INC.,

                      Defendant.

---

John M. McManus (P44102)              Patrick E. Sweeney (P79822)
**MCMANUS LAW, PLLC**                     **RHOADES MCKEE PC**
Attorney for Plaintiffs                Attorneys for Defendant
117 W. Fourth Street, Suite 201       55 Campau Ave., N.W., Suite 300
Royal Oak, MI 48067                   Grand Rapids, MI 49503
(248) 268-8989                        (616) 235-3500
                                      psweeney@rhoadesmckee.com

---

**PROOF OF SERVICE**

    I certify that on October 20, 2020, I filed the foregoing Notice to Adverse Parties of Removal with the Clerk of the Court via First Class Mail and Federal Express, and that I served a true and correct copy of the foregoing upon: John M. McManus, 117 W. Fourth Street, Suite 201, Royal Oak, MI 48067.

                                        */s/Patrick E. Sweeney*
                                        Patrick E. Sweeney (P79822)
                                        RHOADES MCKEE PC
                                        55 Campau Avenue, N.W., Suite 300
                                        Grand Rapids, MI 49503
                                        Telephone:  (616) 235-3500
                                        psweeney@rhoadesmckee.com