UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIBERTY INSURANCE CORPORATION
and THE CINCINNATI INSURANCE
COMPANY,

                Plaintiffs,                Case No. 1:20-cv-12814
                                                        Honorable Thomas L. Ludington

v.

LSP PRODUCTS GROUP, INC.,

                Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SEVER AND REMAND

On September 14, 2020, Plaintiffs filed a complaint in Saginaw County Circuit Court against Defendant LSP Products Group, Inc. ECF No. 1. Plaintiffs are subrogors who paid insurance claims arising out of the alleged failure of two water supply pipelines manufactured by Defendant. Plaintiffs' Complaint includes one count each of negligent design, negligent manufacture, negligent failure to warn/instruct or inadequate warning/instruction, breach of implied warranty, and willful disregard of known defect creating a substantial likelihood of injury due to a faulty plastic coupling nut. *Id.* The case was removed by Defendant on October 20, 2020. *Id.* Defendant answered the Complaint a week later. ECF No. 3.

On November 6, 2020, Plaintiffs filed a document entitled "Opposition to Severance and Remand" that was docketed by their attorney as a motion. ECF No. 6. The Court found the pleading to not be a motion and denied it. ECF No. 7.

On February 2, 2021, Defendant filed a motion to remand. ECF No. 9. Plaintiffs filed a timely response. ECF No. 14. No reply was received. In addition, the Case Management Order

was extended by stipulation on April 5, 2021. ECF No. 15. Discovery is due by October 15, 2021. *Id.*

**I.**

Federal Rule of Civil Procedure 20 provides that persons "may be joined in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Thus, to join plaintiffs in a single action the two independent requirements of Rule 20 must be met: (1) their claims must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1). If a party or claim is improperly joined, on motion or on its own, the Court may drop a party or sever a claim. Fed. R. Civ. P. 21.

The "transaction-or-occurrence" test of Rule 20(a) "is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *In re EMC Corp.*, 677 F.3d at 1357–58 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The "logical relationship" test, in turn, "is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action." *Id.* Courts have applied the "logical relationship" test when interpreting the "same transaction or occurrence" standard not only under Rule 20(a)(2) for joinder of defendants and Rule 13(a) for compulsory counter claims, but also to joinder of plaintiffs under Rule 20(a)(1). *See, e.g.*, *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974) ("[R]ule 20 would permit all reasonable related claims for relief by or against different parties to be tried in a single proceeding.").

Doubts are to be resolved in favor of joinder. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). That is, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.*; *see also LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The words 'transaction or occurrence' are given a broad and liberal interpretation.").

"Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences'—a single transaction is not required." *In re EMC Corp.*, 677 F.3d at 1356 (quoting Fed. R. Civ. P. 20(a)).

**II.**

Defendant aptly summarizes the case to date,

> This a subrogation action arising out of damage allegedly caused to property owned by the Plaintiffs' insureds. The Plaintiffs are casualty insurers who purport to have paid property damage claims for damage caused by the alleged failure of two separate toilet supply lines. The Defendant is a manufacturer of plumbing equipment, including water supply lines.
>
> This lawsuit is advanced by two separate insurance companies: Liberty Insurance Corporation and The Cincinnati Insurance Company. They allegedly paid their insureds under separate insurance contracts for the failure of two separate and discrete toilet supply lines, which were manufactured and purchased at different times, installed by different installers at unique real properties owned by two separate insureds in two different counties. See Schedule A to the Complaint, attached here as Exhibit 1. Plaintiff Liberty Insurance Corporation ("Liberty") alleges that its insured Marilyn Lewis ("Lewis") suffered a loss on July 15, 2016 in Southfield, Oakland County, Michigan, and that Liberty Insurance Corporation paid Lewis's claim in the amount of $24,720.65. Plaintiff, The Cincinnati Insurance Company ("Cincinnati") alleges that its insured Riverfront Medical Realty, LLC ("Riverfront"), suffered a loss on August 22, 2016 in Saginaw, Saginaw County, Michigan, and that Cincinnati paid Riverfront's claim in the amount of $296,456.61.

ECF No. 9 at PageID.163–64 (footnote omitted). In the instant Motion, Defendant explains that

the losses arise from the separate failures of two discrete products at different locations. It has not been alleged or established when these products were manufactured or when they were installed. It is almost certain that the water supply lines were installed by different individuals, and that any inspection or maintenance of these water supply lines were performed by different individuals. Upon reasonable belief, these water supply lines were likely purchased from different sources. In short, if the water supply lines at issue here were manufactured by Defendant, that fact would be the only similarity between the Plaintiffs' respective claims.

ECF No. 9 at PageID.164 (emphasis omitted). Defendant also states that these two claims were previously part of a "mass action" subrogation lawsuit in Nevada state court. ECF No. 9 at PageID.164.

Defendant argues that the two claims are not part of the same series of transactions or occurrences. ECF No. 9 at PageID.169–70. Referencing Merriam-Webster's definition of a "series," it explains,

> The events leading to the alleged water damage at each separate property are not the same spatially or temporally, and do not 'come after one another' in any sort of related succession. Different people made different decisions and undertook different acts in different places at different times, all resulting in separate and distinct mechanisms of loss at each property.

*Id.* Defendant also explains how Plaintiffs' Complaint is boilerplate in nature, broadly alleging that defects may arise from the testing and design, manufacturing, installation and use, and/or alleged deterioration over time. *Id.*

In support of its argument that the two claims are not part of the same series of transactions, Defendant cites five out of circuit cases. In *McGrew v. Howmedica Osteonics Corporation*, the court held joinder of claims and plaintiffs was improper. 2015 WL 159367 (S.D. Ill. Jan. 13, 2015). The plaintiffs in *McGrew* had the same medical device implanted in their spine but suffered from different injuries. In addition, the devices were implanted by different physicians at different hospitals. *Id.* at *2–3. Likewise, in *In re Diet Drugs*, the court found that "the claims of plaintiffs

who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement." 1999 WL 554584 at *4 (E.D. Penn. July 16, 1999).

In *Saval v. BL Ltd.*, multiple plaintiffs with similar vehicle problems brought action against various defendants within the chain of distribution. 710 F.2d 1027, 1031 (4th Cir. 1983). However, the vehicles had "unique histories" and therefore did not satisfy requirements for joinder under FRCP 20. *Id.* The Fourth Circuit also found that the plaintiffs "had 'not demonstrated that any of the alleged similar problems resulted from a common defect." *Id.* at 1031–32. Further, plaintiffs were given different warranties for their vehicles. *Id.* Similarly, in *Rubio v. Monsanto Co.*, a district judge severed claims from multiple plaintiffs alleging that RoundUP caused their cancer because of dissimilarities in exposure and application of the pesticide. 181 F. Supp.3d 746, 758 (C.D. Cal. 2016).

Finally, Defendant analogizes the instant case to *Texas Farmers Insurance Company v. Louisiana-Pacific Corporation*, 321 F.R.D. 561 (E.D. Tex. 2017). In that subrogation action, the court concluded two claims were properly joined under FRCP 20 where lightning struck and destroyed two buildings, allegedly due to a TechShield product manufactured by the defendant. However, the court concluded that the claims should be severed because of differing damage calculations and additional claim specific witnesses that were likely to cause confusion for a jury. *Id.* at 563–64.

In response, Plaintiffs argue that they properly joined the claims because the same or similar plastic coupling nut is at issue, with the same (or substantially similar) design, manufacturing process, and warning. ECF No. 14-1 at PageID.332. As such, they maintain that there will be "substantial evidentiary overlap" regarding the factual background of the claims,

including the design, pre-production research and development, manufacturing process, post-production testing, research and development for warning labels, and Defendants' knowledge of similar failures of plastic coupling nuts. *Id.*

Plaintiffs only address the *Texas Farmers* case cited by Defendant, arguing that it is factually distinct. Instead, they analogize *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.* to the instant case. In *State Farm*, three plaintiffs suffered fire losses due to three common defects in the defendant's dryers. 2012 WL 12878698 (N.D. Ill. Apr. 16, 2012). Plaintiffs contend that similar to *State Farm*, "it is irrelevant that the two losses occurred in different locations, with different insurers, presumably installed by different installers, and even if the products are not identical. The critical question for joinder is whether the defects are common, which is precisely what has been pled." ECF No. 14-1 at PageID.337.

In the Sixth Circuit, a court should not only consider whether claims arise out of the same transaction or occurrence and present a common question of law or fact, but also "whether settlement of the claims or judicial economy would be facilitated [by severance]; [] whether prejudice would be avoided if severance were granted; and [] whether different witnesses and documentary proof are required for separate claims." *Mann v. Mohr*, 802 Fed. App'x 871, 875 (6th Cir. 2020). In the instant case, Plaintiffs are subrogors for insureds who suffered losses due to fractures in a plastic coupling nut. Unlike in cases cited by Defendant, Plaintiffs have alleged the same injury—"circumferential fractures of the plastic coupling nut" on water supply lines—which resulted in significant water damage for each insured. ECF No. 1 at PageID.8. Plaintiffs allege that Defendant was negligent or willfully disregarded known defects in their design, engineering, manufacture, construction, testing, inspection, packaging, marketing, distribution, selling, and warranty of the plastic coupling nuts. Defendant's design and manufacture of the plastic nuts

would be the same or similar for each nut. There is a logical relationship between the evidence that will be presented for both claims. Additionally, the legal and factual analysis will be the same regarding the creation of the plastic coupling nuts. Further, settlement of the claims would not be facilitated by severance, nor would judicial economy. If the Liberty Insurance claim was severed, there would be two cases in two courts addressing a similar issue. Defendant is not prejudiced in defending both claims in federal court, especially when Defendant initially removed the case. Finally, it appears there will be significant overlap of evidence for both claims. Defendant's Motion to Sever and Remand the claims of Plaintiff Liberty Insurance Corporation will be denied.

**III.**

Accordingly, it is **ORDERED** that Defendant's Motion to Sever and Remand the Claims of Plaintiff Liberty Insurance Corporation, ECF No. 9, is **DENIED**.


Dated: May 21, 2021                              s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge